## Case No. 1,463.

### BLACK et al. v. MUNSON et al.

### SAME v. WELLS et al.

[14 Blatchf. 265; 2 Ban. & A. 623.][1]

Circuit Court, D. New York. June 19, 1877.[2]

PATENTS — INFRINGEMENT — ASCERTAINMENT OF PROFITS—EVIDENCE—LICENSE FEE—ROYALTY.

1. In ascertaining the profits derived by a defendant from the use of a patented improvement in a furnace for burning wet tan as fuel, the plaintiff must show, before the master, the particular profits which accrued to the defendant from using such improvement, and is not entitled to the entire profits arising from the use of the furnace.

[Cited in Gould's Manuf'g Co. v. Cowing, Case No. 5,643; Schillinger v. Gunther, Id. 12,457; Greenleaf v. Yale Lock Manuf'g Co., Id. 5,783; Westcott v. Rude, 19 Fed. 833; Reed v. Lawrence, 29 Fed. 918.]

[See note at end of case.]

2. Where the plaintiff fails to give evidence as to such particular profits, the court will not consider exceptions taken by the plaintiff to what is alleged to be incompetent evidence put in by the defendant before the master.

[Cited in Garretson v. Clark, Case No. 5,248; Cornely v. Marckwald, 32 Fed. 293.]

3. The question of what amounts to a fixed license fee or established royalty, considered.

[Cited in Greenleaf v. Yale Lock Manuf'g Co., Case No. 5,783; Matthews v. Spangenberg, 14 Fed. 351; Westcott v. Rude, 19 Fed. 833.]

[In equity. Bills by Charles N. Black, as administrator of Moses Thompson, and Eliza W. Fitzgerald, as administratrix of William P. N. Fitzgerald, against Daniel Munson and

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge: reprinted in 2 Ban. & A. 623; and here republished by permission.]

[2] [Affirmed by supreme court in Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326.]

Henry Knight, and by the same against Henry F. Wells and others, for infringement of letters patent granted to said Thompson—one, April 10, 1855, numbered 12,678, reissued Mårch 31, 1857 (No. 446); the other, December 15, 1857, numbered 18,874—for improvements in furnaces for burning wet fuel and in bagasse furnaces. There was a decree for complainants and for an accounting, and plaintiffs excepted to the master's report. Exceptions overruled.]

Charles N. Black, for plaintiffs.
Dorman B. Eaton, for defendants.

HUNT, Circuit Justice. In the opinion given by me upon the merits of this case, it was held: 1. That the Thompson patent was not intended to include, and did not include, a claim to an invention or discovery of the use of wet tan as a fuel. 2. That the operation of the heat or fire of the ash pits in drying the wet tan, was not a part of the claim. 3. That the parts or combinations of the furnace were not claimed, except in their application to the preparation and combustion of wet fuels. 4. That the construction and operation of the mixing chamber was the elemental idea of the patent, and that this was an improved machine by which the principle of mixing and applying the different heated gases is carried out. 5. That the defendants' machines infringed the right thus secured by Thompson's patent.

In examining the exceptions made to the master's reports, I am not able to see that he has erred in the principles of law laid down by him. The principles laid down by the master, which are embraced within the first four of the complainants' exceptions, fall within the conclusions above stated, and the exceptions must be overruled.

The fifth exception is to that part of the report which announces "that the complainants' patent only secures to the patentee a part of the furnace, and it was the duty of the complainants to show by proofs, which they have failed to do, the particular profits which have accrued to the defendants from the use of the particular improvement of Thompson's, and that this was necessary in order to show any savings to the defendants, or profits made by them, by the use of Thompson's invention." This principle is sound, and, applied to the present case, means, that the defendants cannot be charged with the profits arising from the use of a furnace which burns wet tan as a fuel, and which dries the tan, in its use, by means of its fires or ash pits, and which also uses a mixing chamber upon the principle of Thompson's furnace. The first two operations the defendants have the right to use, and all the profits and advantages to be made from their use belong to them. They infringe upon no right of Thompson or the complainants, in such use. Thompson's patent gives a monopoly of the use of the mixing chamber only, and it is only for the profits that arise from that portion of the furnace that he can claim damages. It is possible that the profits made by the defendants' machine are in spite of, rather than in consequence of, the use of the mixing chamber described. Conceding that the apparatus and process of Thompson are used by the defendants, it does not follow that the profits of the business are due to that source. The master justly says, that it is the duty of the complainants to make proof of the profits arising from the use of that portion of the furnace which is included in Thompson's improvement. The opinion before referred to, and that of Judge Blatchford in the Thorne Case (Black v. Thorne [Case No. 1,465]), both hold, that the furnaces constructed after the models of the Hoyt, Sparrowbush, Crockett and Morrison furnaces, as arranged before the date of Thompson's invention, are not in conflict with Thompson's patents. I consider it clear, therefore, that the principle laid down by the master, as applied to this case, is a sound one. It is not enough, therefore, for the plaintiffs to prove, that, in burning wet tan in his furnace, and in using Thompson's improvement, the defendant Knight saved $5,691 in the item of wood, between January 1st, 1864, and May 22d, 1872. They must show, also, that this economy was due to the use of Thompson's improvement, to wit, the construction and apparatus of the mixing chamber. This they fail to do.

The plaintiffs also except to the decision of the master in permitting proof to be made, that the defendants are now burning wet tan in Hoyt's or Crockett's furnaces. This is supposed to be what is meant by the seventh exception, which is entirely general in its terms, not specifying whose testimony, or on what points, or on what occasion, or as to what subject, the objection is taken. I think this exception must be overruled for the reasons following: 1st. It is too general. 2d. Assuming that it refers to the evidence intended to rebut the claim of damages, by showing that an equally good result was produced in the furnaces in which wet tan is burned which did not use Thompson's improvement, it comes within the principle of Mowry v. Whitney, 14 Wall. [81 U. S.] 620. What advantage did the defendants derive from using the plaintiffs' improvement, over any other furnace open to their use? 3d. If, as I have before stated, the plaintiffs have failed to establish their claim by showing what portion of the profits was due to the use of Thompson's improvement, then the defendants are not put upon their defence in that respect, and, whether they gave incompetent evidence, or no evidence, is not important. If their evidence, in this respect, is all stricken out, they are protected by the plaintiffs' failure. They are not called upon to rebut until the plaintiff has made out a case.

The plaintiffs contend, further, in their

eighth exception in the Wells Case, that they have made out their damages upon the datum of a fixed license fee for the use of the improvement. In an action in equity, (which is this case,) profits made by the assignee by the use of the improvement, constitute the general measure of damages. Sales, or a royalty established, on the other hand, constitute the primary criterion of damages in actions at law (Burdell v. Denig, 92 U. S. 716;) but, in any court, this latter rule can only be applied, where there is a fixed and established price at which a license is granted. No price can be said to be fixed, or royalty established, where the patentee varies his price according to the courage, or the ability to resist, of the infringer, or where there are other circumstances showing the absence of a fixed and established fee. The master states, in his report, that the counsel and plaintiff (Mr. Black) admitted, on the argument before him, that he had not established any fixed license fee. I must assume this to be true. Mr. Black's testimony shows, that two-thirds of those who took licenses from him, did so after suit commenced against them, and a liability to be stopped in their business by injunction, and that the amounts varied from $100, the sum received from Mr. Wood, to $2,500, the amount collected from Mr. Stevens by litigation. To the Boston Dye Wood Co. he gave a license for the sum of $3,000, but afterwards deducted $1,250, because their furnace did not work well. None of the licenses given by him expressed any limitation as to the amount of business to be done under it. I know of no authority and of no principle, on which, under these circumstances, it can be held that damages are established by the existence of a fixed license fee or an established royalty.

I have not discussed or passed upon the exceptions seriatim or by numbers, but the views expressed cover the whole case, and I am of the opinion, and do decide, that each and every one of the said plaintiffs' exceptions should be overruled.

[NOTE. For other cases involving this patent, see note to Black v. Thorne, Case No. 1,465.

[On affirmance by the supreme court, FIELD, J., delivering the opinion, said: "The report could not have been otherwise than as it was. It does not always follow that because a party may have made an improvement in a machine, and obtained a patent for it, another using the improvement and infringing upon the patentee's rights will be mulcted in more than nominal damages for the infringement. If other methods in common use produce the same results, with equal facility and cost, the use of the patented invention cannot add to the gains of the infringer, or impair the just rewards of the inventor. The inventor may, indeed, prohibit the use, or exact a license fee for it; and, if such license fee has been generally paid, its amount may be taken as the criterion of damage to him when his rights are infringed. In the absence of such criterion, the damages must necessarily be nominal." Black v. Thorne, 111 U. S. 122, 4 Sup. Ct. 326.]