## Case No. 7,564.

### JUDSON v. BRADFORD et al.

[3 Ban. & A. 539; [1] 16 O. G. 171; Merw. Pat. Inv. 462.]

Circuit Court, D. Massachusetts. Oct. 9, 1878.

PATENTS—PRESUMPTION OF VALIDITY—TRIAL.

1. Issues of fact in civil cases in the circuit courts may be tried and determined without a jury, whenever the parties or their attorneys of record file with the clerk a stipulation in writing, consenting to that mode of trial.

2. All matters of fact involved in the hearing of an application to reissue a patent, and in granting it, are conclusively settled by the decision of the commissioner of patents in granting the application.

3. A patent offered in evidence affords a prima facie presumption of its validity, but such presumption may be overcome by proof that the improvement was previously made and reduced to practice by another, in this country; or that it had been previously known to and used by others here before it was invented by the plaintiff; or that it had been patented or described in some printed publication prior to the supposed invention by the patentee.

4. Mere discovery of a patentable improvement does not constitute it the proper subject of a patent, unless it be embodied, if a machine, into working machinery, and adapted to practical use.

5. Evidence of mere prior knowledge, without use, is not sufficient to defeat a patent prima facie valid; the invention must be shown to have been complete, and capable of working.

[Cited in Stitt v. Eastern R. Co., 22 Fed. 651.]

6. Requisites of notice of defences of prior patents or public use, stated.

7. Where the evidence with regard to license fee, showed only a single license: *held*, that, under the circumstances of this case, it could not be regarded as affording the only measure of compensation to which the plaintiff was entitled.

[Cited in Westcott v. Rude, 19 Fed. 833; Graham v. Plano Manuf'g Co., 35 Fed. 598.]

[This was an action against E. P. Bradford and others to recover damages for the infringement of letters patent No. 173,124, granted to Catherine Judson February 8, 1876, and reissued June 12, 1877 (No. 7,729).]

L. B. Thompson and T. W. Clarke, for complainant.

J. L. Newton and T. L. Livermore, for defendants.

CLIFFORD, Circuit Justice. Issues of fact in civil cases in the circuit court may be tried and determined without a jury, whenever the parties or their attorneys of record file with the clerk a stipulation in writing, consenting to that mode of trial. Pursuant to that regulation, the proofs in this case were taken in open court, and the cause was heard without the intervention of a jury. Reissued letters patent for an improvement in corset-springs are held by the plaintiff, and she charges in her writ and declaration that the defendants have infringed the exclusive right, which the patent secures to her

1 [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

as such patentee, of making, using and vending the patented improvement, and claims damages for the alleged injury.

Service was made, and the defendants appeared and filed an answer, setting up several defences to the effect following: First: They deny that the plaintiff, as such patentee, was the original and first inventor of the alleged improvement. Second. They deny that the alleged improvement is either new or useful. Third. They insist that the alleged improvement was known to, and had been used by, the several persons whose names and places of residence are set forth in their original answer. Fourth. They allege that the improvement described in the second claim of the plaintiff's patent is found in each of the three patents mentioned in their original answer, and which are set up in defence to the action. Fifth. They also deny that they have ever infringed the patented improvement of the plaintiff, but admit that they have made corset-clasps, having studs situated as described in said second claim of the patent in question, with the fastening-spring lying upon the busk when in use in the manner described in that claim. Sixth. Even if the patent is valid and the charge of infringement is proved, still the defendants insist that the plaintiff is not entitled to more than nominal damages.

Some of the defences are several times repeated; but the whole substance of the defence is embraced in these several propositions. Defences of a like character are set up in the amendment to the answer, in which it is alleged that the supposed improvement is superseded by certain other patents therein described, and that it was known to many other persons therein named prior to the alleged invention made by the plaintiff. Leave to amend the answer was also filed by the defendants on the day of the hearing; but the court, in view of all the circumstances, denies the application as not having been filed in season to justify its allowance. Patents, in certain cases, may be surrendered and reissued, but the reissued patent must be for the same as the original. Persons sued as infringers may set up the defence that the reissue is for a different invention from that described and secured in the original patent; but all matters of fact involved in the hearing of an application to reissue a patent, and in granting it, are conclusively settled by the decision of the commissioner in granting the application. Power to grant reissued patents, as well as originals, is vested in the commissioner, and when that power has been lawfully exercised, and a patent has been duly granted, whether reissued or original, it is of itself, if introduced in evidence by a party claiming redress for an alleged infringement, prima facie evidence that the patentee is the original and first inventor of that which is therein described and secured to him as his invention. Redress for infringement is sought by the plaintiff in

this case, and the reissued patent, having been introduced in evidence. affords a prima facie presumption of the validity of the patent described in the declaration. Grant that, and still that presumption may be overcome by proof that the improvement was previously made and reduced to practice by another in this country; or that it had previously been known to and used by others here before it was invented by the plaintiff; or that it had previously been patented or described in some printed publication prior to the supposed invention by the patentee. Questions of the kind usually make it necessary to examine the specifications and drawings of the patent, in order to understand what its elements or ingredients are, and, in the case of a machine patent, to ascertain their mode of operation.

My invention, says the patentee, relates particularly to that portion of a corset known as the clasp or spring, and is intended to strengthen the clasp or busk, and especially at that portion of the same near the natural waist, where breakage is most liable to occur. Strength is imparted to the clasp or busk by means of an additional supporting steel or spring fixed immovably upon the wide steel or busk at two points, having its ends free, one above and the other below the waist, or centre of the busk. Improvements of the kind, the patentee admits have been patented, which include additional strengthening steels, unfastened or fastened at the centre to the main steel; but she alleges to the effect that her improvement, which is fastened at the two points named. is better than those previously patented, because the steels between the points of fastening are kept stiff by the fastenings, and help to support each other, while, if they were merely fastened at the centre, the additional strength would only be that of an unaided steel, as weakened by the fastening process. Decided merit is also claimed for the patented improvement, because the studs, in order to strengthen the clasp, are placed near the edge of the busk which is farthest from the fastening-spring, which, it is said, is the reverse of the usual position, and brings the fastening-spring over the strengthening-steel and over the centre of the busk. Combined as the three steels are under the described arrangement. it is clear that the clasp is much strengthened, and the patentee states that even if the strengthening-steel be omitted, still the arrangement is better than those in prior use, as the fastening-steel. instead of lying upon the side of the busk, will lie upon its centre, inasmuch as the studs are upon the left instead of the right side. Minute description is then given of the several devices embodied in the patented improvement, and the function which each performs is clearly delineated by reference to the drawings, from which it is clearly shown that the clasp is strengthened in two ways, first, by the position of the fastening-spring

hooking over to the farther side of the busk, and secondly, by the short steel spring placed near the centre of clasp-springs at the natural waist, where the springs are most liable to be bent and strained.

Special reference will only be made to the second claim, for the reason that the charge of infringement, as made in the argument, applies exclusively to that claim, which is for: "In a corset-clasp, a busk or spring, having its studs or fastening devices placed near the edge, farther from that side of said busk or spring over which the fastening-spring is brought to be attached to said busk or spring, thus causing the said fastening-spring to lie upon said busk or spring near its centre or farther edge, for the purpose set forth."

Beyond all question, the invention, as the patentee states, relates to that portion of the corset generally known as the clasp or springs, but the court is of the opinion that the invention in question, when viewed in connection with the descriptive portion of the specification, may be considered as a combination of old elements into an improved busk or clasp, provided with studs placed as described, and combined with the described overlying spring, the whole apparatus or contrivance constituting an improvement in corsets, as alleged in the introductory words of the specification.

Two narrow corset-springs were formerly used by manufacturers of the article—the fastening-spring having clasps to hold the corset together when closed around the waist of the wearer, the studs upon the busk being placed near the inner edge thereof, toward the fastening-spring, thus bringing the two springs adjacent to each other. Difficulties attended that mode of arranging the springs, as all the witnesses agree. Inconvenience resulted to the wearer, as it became necessary, in order to fasten the corset, to bring the two springs together, which frequently had the effect to pinch the under-garment and to cause the springs to break, rendering the corset valueless before it had been much worn. Efforts of various kinds were made to obviate these difficulties, but the efforts were not attended with much success prior to the patent in controversy. Plans of various sorts were devised, but the plaintiff, it appears, conceived the idea of placing the studs in a wide busk, on the farther edge thereof from the clasp or fastening, which brings the clasp, when fastened, in a central position over the busk, thus giving strength and stability to the corset-springs. Additional strength is also imparted to those springs by another device, described as a short steel, lying upon the centre of the busk, with two fastenings near the centre, and having its ends free; but it is not necessary to give that device much consideration, as it is conceded that it is not infringed.

I. Three patents are named in the original answer, as supporting the first defence.

They are as follows: (1.) The Schneller patent, dated September 10, 1872. (2.) The Drew & Bayliss patent, dated September 9, 1853. (3.) The Roby patent, dated August 26, 1873. Two of the claims of the patent first named are referred to as supporting the defence that the patent in controversy is not valid. Of these, the first is a claim for a corset-spring, composed of two blades of steel or other flexible and elastic material, one of the blades being made to cover the other, when the two parts of the corset-spring are connected by means of the described hooks, having rounded backs and curved on the inside, as set forth. Unlike the first, the other, which is the third claim of the patent, is for a corset-spring composed of three blades of elastic material, one blade forming the clasp and covering the other two blades when all are brought in position, said blades being so adapted as to be connected together by hooks having rounded backs as described. Prior explanations in respect to each of these claims are given in the specification. In respect to the first, the patentee states that the invention consists in a corset-spring, composed of two blades of steel or other flexible and elastic material, so arranged that, when the parts of said spring are connected, one of said blades covers the other blade or blades, thereby increasing the strength and elasticity of the device, and preventing the same or any part thereof from turning edgewise, or from leaving an open space between the two ends of the corset; the patentee adding that the blades are connected together by hooks having rounded backs, and that, being curved on the inside, they approach each other closely, as lateral strain is exerted.

Pertinent explanations are also made as to that part of the invention secured in the third claim, which are, that it consists in a clasp for a corset-spring composed of a single blade, in connection with two other blades made like ordinary corset-steels, both of them being provided with hooks to catch in holes in the covering-blade, the two described blades being covered by the one first mentioned, by which their strength and elasticity are increased, and they are effectually prevented from turning edgewise, or from leaving an open space between the ends of the corset.

Argument to show that the first patent introduced by the defendants is substantially different in its devices, combination of parts, and mode of operation, from the improvement patented to the plaintiff, is quite unnecessary, as the proposition becomes self-evident by a careful comparison of the two specifications. Enough has already been remarked to show that the findings of the court must be in favor of the plaintiff, unless the propositions of the defendants, made in defence, or some one of them, are sustained by the evidence they have introduced in their support, which makes it necessary to examine the second patent set up in the original answer, and to compare the devices described in the specification with those exhibited in the specification of the plaintiff's patent.

Improvements in stay and other like fastenings were patented to Drew & Bayliss prior to the invention of the plaintiff, but their invention related chiefly to the manufacture of stay-fastenings, the object of the inventors being to provide a simple construction or fastening which would admit of the stay being readily removed from the body of the wearer, and to that end they attached the busk of the stay to one edge thereof, and to the other edge they secured a thin strip of steel, caused to overlay the former by providing it with slots to receive studs projecting from the face of the busk. Means for disengaging the overlying strip are also described, which is accomplished by bending the busk forward, the effect of which, as represented, is to bring the studs forward to the enlarged ends of the slots, and to disengage the overlying strip. Fastenings, as the patentees represent, may be constructed in the mode suggested, on the edges of the steel. Strips may be constructed so as to abut against each other, in which event the studs or hooks must project from the side of one steel strip so as to enter into the slots of the other.

Particular description is also given of the busk, the language of which it is unnecessary to reproduce, as the claim of the patentee is only for the construction of the fastening as described and shown in the drawings. Unlike as the improvement described in that specification and the patented improvement of the plaintiff are, the court is of the opinion that no remarks are necessary to show that the former has no tendency to show that the plaintiff is not the original and first inventor of the improvement described in her patent. About the same time improvements in fastening corsets by a mechanical busk were made by Louis Van Caneghem, for which he received letters patent prior in date to the invention of the plaintiff; but the invention is not of a character which requires any special description in this investigation, for the reason that the improvement is materially and substantially different from the invention in question between these parties. Other patents were introduced by the respondents for the same purpose, to which the same remarks apply, and for that reason they will not be separately considered.

II. Attack is also made upon the utility of the invention, but the proofs are so decisive upon that subject that it is unnecessary to discuss it, and the defence is accordingly overruled.

III. Prior knowledge and use constitute the substance of the third defence.

Thirty days' notice of certain defences must be given in writing, before trial, to the

plaintiff, in order that evidence may be admitted under the general issue to prove the same, the object of the notice being that the plaintiff may not be surprised when the evidence is offered. Examples of the kind are the following: (1.) That the invention of the plaintiff had been patented or described in some printed publication prior to his supposed invention. (2.) That it had been in public use or on sale in this country for more than two years before his application for a patent.

When the notice is of a prior patent, the requirement is that the defendant shall give the name of the patentee, the date of the patent when granted, and the name and residence of the person alleged to have invented the same, the latter being necessary only when the patentee is not the inventor. Notice in like form is also required as to previous invention, knowledge or use of the thing patented and claimed by the plaintiff, and in that case the requirement is that the defendant shall state the names and places of residence of the persons alleged to have had the prior knowledge of the thing patented, and where and by whom it had been used. Rev. St. § 4920; Teese v. Huntington, 23 How. [64 U. S.] 10; Phillips v. Page, 24 How. [65 U. S.] 168. Prior knowledge of the thing patented, and where and by whom it had been used, are required to be stated, which shows very clearly that in order to defeat the patent in suit by such a defence there must have been some use of the alleged prior invention. Mere discovery of a patentable improvement does not constitute it the proper subject of a patent unless it be embodied, if a machine, into working machinery, and adapted to practical use. Whoever first perfects a machine, and makes it capable of useful operation, is entitled to a patent. Reed v. Cutter [Case No. 11,645]. Such were the views of Judge Story, and he held that the person is the first inventor, in the sense of the patent act, and entitled to a patent, who has first perfected and adapted the invention to use, and that until the invention is so perfected and adapted to use it is not patentable under the patent laws. Washburn v. Gould [Id. 17,214]; Woodcock v. Parker [Id. 17,971]; White v. Allen [Id. 17,535]; Seymour v. Osborne, 11 Wall. [78 U. S.] 552. Crude and imperfect experiments are not sufficient to confer a right to a patent, but, in order to constitute an invention, the party must have proceeded so far as to have reduced his conception to practice, and have embodied it in some distinct form. Id. 552. All these cases show that evidence of mere knowledge without use is not sufficient to defeat a patent valid in form; but since the decision in the case of Coffin v. Ogden, 18 Wall. [85 U. S.] 120, it must be conceded that the evidence is sufficient to support the defence of prior knowledge and use, if it proves that the invention was complete and capable of working, if it had been put in use, and was known to any considerable number of persons.

Governed by these suggestions, the court will proceed to examine such portions of the evidence given in support of the third defence as seem to deserve special consideration. Evidence upon that subject was given by the defendants, but that most urged in support of the third defence is the testimony of David H. Fanning. He was examined, but the required notice that he would be called to prove prior knowledge and use, was not given in the answer. Of course his testimony is inadmissible to prove that defence, and the evidence was not admitted for any such purpose. But the court will not rest its decision entirely upon that ground, as it is clear that the evidence, if admissible, fails to prove the defence, even admitting that the exhibit is substantially the same as the improvement patented to the plaintiff. Take what he says to be true, and it only shows that he made the corset in March or April, 1875, without showing that it was ever put to practical use, and the witness states that he never made but one of the kind, and that it has remained in his office ever since.

Two well-founded objections to the reliability of the witness exist—viz: (1.) That the reasons given by the witness for recollecting the date are unsatisfactory and insufficient. (2.) That the testimony, if true, is not sufficient to establish the defence, as it fails to show that the exhibit was ever put in practical use, or that any one except the witness had the required knowledge of its existence. Testimony was introduced as to the date of the plaintiff's invention, from which it appears, to the entire satisfaction of the court, that it was made as early as the 21st of May, 1875—as appears by the positive testimony of the inventor and patentee.

Other witnesses were examined by the defendants to prove the third defence, but it must be sufficient to say that none of their statements establish the proposition, and the defence in question is accordingly overruled. Reed v. Cutter [supra]; Whiteley v. Swayne, 7 Wall. [74 U. S.] 687; Pennock v. Dialogue, 2 Pet. [27 U. S.] 13; Bedford v. Hunt [Case No. 1,217]; Union Sugar Refinery v. Matthiesson [Id. 14,399].

IV. Remarks already made are sufficient to dispose of the fourth defence, as they show that neither of the patents mentioned in the answer is of a character to supersede the plaintiff's patent.

V. Nor is much discussion of the fifth defence necessary, as the answer admits that the defendants have made, for a long time, and continue to make, a corset-clasp having its studs as described in the second claim of the plaintiff's alleged invention, and that the fastening-spring lies upon the busk when in use as set forth in said second claim.

Suffice it to say that the charge of infringement is fully proved as alleged in the declaration. Under the submission, it is claimed by

both parties that the damages must be assessed by the court without the intervention of a jury. Where the suit is at law, the measure of damages is, that the verdict of the jury must be for the damages sustained by the plaintiff, subject to the right of the court to enter judgment thereon for any sum above the verdict, not exceeding three times that amount, together with costs. Birdsall v. Coolidge, 93 U. S. 69; 16 Stat. 207.

Frequent cases arise where proof of an established royalty furnishes a pretty safe guide for the instructions of the court, and the finding of the jury, but cases also arise where it cannot be applied without qualification, as where the patented improvement has been used only to a limited extent and for a very short period. Proof of a single license was given in this case, but it cannot, in view of the circumstances, be regarded as affording the only measure of compensation to which the plaintiff is entitled. Where there is proof of an established license fee, it may, in a case of protracted infringement, be regarded as a pretty safe guide; but the proof in this case is not of that character, and, in such a case, general evidence may be resorted to as the basis of decision. Suffolk Manuf'g Co. v. Hayden, 3 Wall. [70 U. S.] 320.

Neither party having furnished any definite evidence as to the amount of the injury sustained by the plaintiff, the court is compelled to estimate the same from evidence introduced upon the subject. Weighed in review of the whole evidence, as the question must be, the court finds that the plaintiff is entitled to recover, as compensation for the injury occasioned by the infringement, the sum of three hundred dollars, with costs; that the case is not one where punitive damages should be allowed, or judgment rendered for any sum above that allowed as actual damages. Judgment for the plaintiff in the sum of three hundred dollars, with costs.

[For another case involving this patent, see Hardy v. Marble, 10 Fed. 752.]